IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD WOZNICKI ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 14-1202-GMS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM**

Plaintiff Richard Woznicki ("Woznicki") appeals from a decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title XVI of the Social Security Act, 42 U.S.C. § 401-434. The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the court are the parties' cross-motions for summary judgment. (D.I. 9, 12). For the foregoing reasons, Woznicki's motion for summary judgment is granted-in-part and denied-in-part; the Commissioner's motion for summary judgment is denied-in-part and granted-in-part; and the matter is remanded for further findings and proceedings consistent with this Memorandum.

**I.   BACKGROUND**

**A.   Procedural History**

Woznicki filed an application for DIB on June 9, 2011, alleging disability due to attention deficit disorder, illiteracy, arthritis, and dyslexia. (Tr. 136-39). His claim was denied initially and

on reconsideration. (Tr. 54, 61). Woznicki then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 18, 2013. (Tr. 29-50). On May 3, 2013, the ALJ issued a decision finding that the ALJ issued a decision finding that there were numerous jobs in the national economy that Woznicki could perform and, therefore, he was not disabled. (Tr. 22-23). The Appeals Council denied Woznicki's request for review on July 15, 2014, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Having exhausted his administrative remedies, Woznicki filed this action. (D.I. 1).

**B.     Medical History**

Plaintiff was born in June 24, 1961, making him 49 years old as of the alleged onset date of June 9, 2011. (Tr. 22). But he was 51 years old at the time of the date last insured (December 31, 2012), the date of the administrative hearing (April 18, 2013), and the date of the ALJ's decision (May 3, 2013). (Tr. 13, 23, 147). Woznicki has a sixth-grade education and past work experience as a carpet installer for multiple employers. (Tr. 33-35, 142-44). He was employed for 22 consecutive years from 1985 to 2006. (D.I. 10 at 12). It is unclear why there is 3 year gap in earnings from 2006 to 2010. (*Id.*). Following is a summary of evidence relevant to the issues raised on appeal.

Woznicki has received treatment for chronic bilateral knee pain since March 2006, when he tripped and landed on his right knee. (Tr. 340-47). An April 12, 2006 right knee MRI revealed retropatellar chondromalacia, and x-rays performed on July 10, 2009 revealed bilateral degenerative disease. (Tr. 350-52). On April 27, 2010, Woznicki presented to Dr. Rowe with reports of bilateral knee pain more severe on the left. (Tr. 209). An examination revealed grade 1 effusion and audible crepitus of the left knee. Dr. Rowe administered a cortisone injection to the knee. (*Id.*). On May 6, 2010, Woznicki returned with complaints of right knee pain. Dr. Rowe

2

noted right knee crepitus, grade 1 effusion, and pain at the patellofemoral joint with extension. (Tr. 208). He diagnosed Woznicki with bilateral retropatellar chondromalacia, administered a cortisone injection to the right knee, and prescribed Voltaren 75 mg. (*Id.*).

On July 18, 2012, Woznicki presented to Bayhealth Medical Group with reports of bilateral knee pain and swelling. An examination revealed tenderness to palpation of the anterior knees, worse on the right, and a positive standing athlete's test on the right. X-rays depicted bilateral joint space narrowing. (Tr. 305). Woznicki received cortisone injections to both knees. (Tr. 306). On February 7, 2013, he returned to Bayhealth Medical Group with continued knee pain and "crunching" in the knees with walking. Upon examination, he demonstrated tenderness primarily over the anterior aspect of both knees, lateral joint line tenderness of the right knee, and palpable crepitus bilaterally. A standing Apley's test produced pain in both knees. Kristen McLaughlin, PA-C, recommended physical therapy and over the counter anti-inflammatories. (Tr. 333).

### C. Medical Opinions

#### 1. Opinion of Consultative Examiner Dr. Ayoola.

On August 23, 2011, Ephraim Ayoola, M.D., performed a consultative examination of Woznicki. Upon examination, Dr. Ayoola reported that Woznicki's gait is normal, motor power is 5/5 in all limbs, sensations are intact, straight leg raising is negative. (Tr. 241-43). There was no tenderness or deformity of the joints and no peripheral edema or atrophy. (*Id.*). Dr. Ayoola's diagnostic assessment was bilateral knee pain secondary to degenerative joint disease and chondromalacia and osteoarthritis of the hand joints. (*Id.*).

According to Dr. Ayoola, Woznicki had the residual functional capacity to lift/carry ten to fifteen pounds; stand for at least one hour; and sit for three hours. (Tr. 241-42). Dr. Ayoola

3

opined that there was no significant obstacle to Woznicki being able to work 30-40 hours per week with usual breaks provided it was at a sedentary level of exertion. (*Id.*).

### 2. State Agency Opinions

On September 2, 2011, Michael Borek, D.O., completed a Physical Residual Functional Capacity Assessment of Woznicki. (Tr. 251-56). Upon reviewing Woznicki's entire medical record, Dr. Borek found that Woznicki could occasionally lift and/or carry 50 pounds and could frequently lift and/or carry 25 pounds. (Tr. 252). Woznicki could stand and/or walk and sit for a total of six hours during an eight-hour workday. (Tr. 252). Dr. Borek opined that Woznicki was limited in his ability to push and/or pull with his lower extremities. (Tr. 252). Due to his knee impairment, Dr. Borek concluded that Woznicki could frequently balance and stoop, and occasionally climb, kneel, crouch, and crawl. (Tr. 253). Dr. Borek assessed no manipulative, visual, or communicative limitations, but concluded that Woznicki should avoid concentrated exposure to extreme cold and vibration because it could increase his pain. (Tr. 253-54). In support of his conclusion, Dr. Borek explained that Woznicki had retropatellar chondromalacia associated with years of laying carpet, but his alleged inability to perform any physical activity was not supported by the objective medical findings, including the essentially normal consultative examination findings. (Tr. 256). On December 5, 2011, Jose Acuna, M.D., affirmed Dr. Borek's opinion and physical RFC assessment. (Tr. 265).

### D. The ALJ's Findings and Conclusions

The ALJ decided Woznicki's case pursuant to the five-step sequential evaluation process described in Social Security's regulations. (Tr. 23-31). At step one, the ALJ found that Woznicki had not performed substantial gainful activity between the alleged onset date of February 1, 2011 and the date last insured of December 31, 2012. (Tr. 15). At steps two and three, the ALJ found

that Woznicki had the severe impairments of borderline intellectual functioning, due in part to dyslexia, and degenerative joint disease in bilateral knees, but he did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-18). The ALJ proceeded to step four, where he found that Woznicki retained the residual functional capacity ("RFC") to perform light work, except that he was limited to unskilled jobs with an SVP of one or two defined as being low stress, with low concentration or memory requirements; involve one to two step tasks; no production rate pace work and little or no decision making or changes in work setting or judgment. Woznicki could lift ten pounds frequently, twenty pounds occasionally; stand or sit for one hour consistently on an alternate basis; needs to avoid heights, hazardous machinery and temperature extremes and must avoid ladders, ropes, and scaffolds. Additionally, Woznicki could do work that does not require reading or writing ability on more than an infrequent basis; can drive an automobile and has a driver's license; and can count change. (Tr. 18). The ALJ determined that Woznicki could not perform his past relevant work, but found at step five that Woznicki was capable of making a vocational adjustment to other work that exists in significant numbers in the national economy. (Tr. 21-22). Therefore, the ALJ determined that Woznicki was not disabled. (Tr. 31).

## II.   STANDARD OF REVIEW

A reviewing court will reverse the ALJ's decision only if the ALJ did not apply the proper legal standards or if the decision was not supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). If the ALJ's findings of fact are supported by substantial evidence, the court is bound by those findings even if it would have decided the case differently. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Evidence is considered "substantial" if it is less than a preponderance but more than a mere

scintilla. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, the court may not undertake a *de novo* review of the decision, nor may it re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c). *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## III. DISCUSSION

Woznicki makes several arguments in support of his motion for summary judgment. First, according to Woznicki, the ALJ erred in assigning little weight to the opinion of the consultative examiner. This error was not harmless because Woznicki was closely approaching advanced age. Second, the ALJ failed to include in his RFC all of the postural limitations opined by the state agency non-examining physicians, even though the ALJ otherwise gave those opinions "considerable weight." Finally, Woznicki's testimony was entitled to substantial credibility due to his long work history with a single employer. Before addressing each of these arguments, the court will address an error in the ALJ's opinion with respect to Woznicki's age.

### A. Closely Approaching Advanced Age

Generally, a claimant's age is determined at the time of the decision, not at the time of the application or the hearing. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987); *Kumanchik v. Astrue*, 2012 WL 875448, at *2 (W.D. Pa. Mar. 14, 2012) ("For the purposes of determining age under the grids, the claimant's age as of the time of the decision governs.").

Some cases have distinguished that rule when a claimant's date last insured occurs before the date of the decision. In those cases, the "claimant's age on the date last insured generally governs." *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 527 (6th Cir. 2006); *Kappler v. Comm'r of Soc. Sec.*, 2010 WL 503033, at *6 (D.N.J. Feb. 8, 2010) (finding that the ALJ correctly applied the date last insured rather than the later date of the hearing to determine claimant's age for DIB).

Here, it does not matter whether the court considers the date of the decision (May 3, 2013), the date of the hearing (April 18, 2013), or the date last insured (December 31, 2012). (Tr. 13, 23, 147). On all of these dates, Woznicki was 51 years old, and therefore, considered under the regulations to be a person "closely approaching advanced age." 20 C.F.R. § 404.1563. It appears that the ALJ made an error by noting that Woznicki was "51 years old," but then concluding that he was "a younger individual age 18-49 on the date last insured." (Tr. 22). This error is not harmless, because in seeking testimony from the vocational expert, the ALJ only posited that the hypothetical individual was 49 years old, and thus a younger individual. (Tr. 46). In addition, this error could impact how the ALJ applied the Medical Vocational Guidelines. According to Woznicki, if the ALJ properly credited Dr. Ayoola's opinion that he was limited to sedentary work, then the Medical Vocational Guidelines require a finding of disabled. Thus, the court remands for the ALJ to obtain new evidence from the vocational expert, and reconsider any other evidence in the record as needed, in light of the fact that Woznicki was an individual closely approaching advanced age.

B. **Medical Opinions**

Woznicki argues that the ALJ impermissibly relied on his own lay analysis in giving the opinion of Dr. Ayoola "little" weight. (D.I. 10 at 8). It is well established that an ALJ may not

reject a medical opinion based only on his own lay interpretation of medical evidence. *See, e.g., Burns v. Colvin*, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician."); *Morales v. Apfel*, 225 F.3d 310, 317–18 (3d Cir. 2000) (explaining that an ALJ may not outright reject a medical opinion due to his own "credibility judgments, speculation or lay opinion").

An ALJ may, however, give little weight to a doctor's opinion that is inconsistent with the medical evidence of record and with his own examination findings. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (holding that an unsupported diagnosis is not entitled to significant weight). *Hall v. Comm'r of Soc. Sec.*, 218 F.App'x 212, 215 (3d Cir. 2007) (affirming an ALJ's decision to give little weight to a treating physician's opinion where there were "internal inconsistencies in the various reports and treatment notes").

The ALJ here gave "little" weight to Dr. Ayoola's opinion, because it was not supported by his "clinical observations or the medical evidence of record." (Tr. 21). Specifically, Dr. Ayoola found that Woznicki "had essentially a normal physical examination ... with intact sensations, full motor power in all limbs, a normal gait without the use of an assistive device, normal range of motion in each and every joint tested, no tenderness or deformity of joints and no peripheral edema." (Tr. 21). The ALJ also considered Dr. Ayoola's opinion to be inconsistent with diagnostic imaging from 2006 and 2012 showing only mild retropateller chondromalacia and no significant joint space narrowing. (*Id.*). The court also notes that Michael H. Borek, D.O., and Jose Acuna, M.D., who reviewed the medical evidence for the state agency, opined that Woznicki could perform work at the light level of exertion. (*Id.*). Accordingly, the court cannot conclude that the ALJ relied solely on his own lay interpretation in giving Dr. Ayoola's opinion "little" weight.

8

### C. RFC

Woznicki argues that the ALJ was required to adopt all of the postural limitations found by Dr. Borek, because the ALJ accorded Dr. Borek's opinion "considerable weight." (D.I. 10 at 9-11). However, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight." *Wilkinson v. Comm'r of Soc. Sec.*, 558 Fed. App'x 254 *2 (3d Cir. 2014).

More important, Woznicki has not addressed how the ALJ's conclusions would change even if the ALJ included those additional postural limitations in the RFC. Dr. Borek opined that Woznicki was limited in his ability to push and/or pull with his lower extremities, and that he could occasionally climb, kneel, crouch, and crawl. (Tr. 252-53). It appears, however, that the jobs identified by the ALJ do not require an individual to be capable of performing those functions. *See* DICOT 920.687-018, 1991 WL 687965 (stating that climbing, kneeling, crouching, and crawling are not present in job as garment bagger); DICOT 920.687-026, 1991 WL 687967 (stating that climbing, kneeling, crouching, and crawling are not present in job as table assembler with paper goods); DICOT 780.687-046M 1991 WL 680820 (stating that climbing, kneeling, crouching, crawling not present in job as hand stuffer). Accordingly, even if the ALJ was required to incorporate these additional postural limitations in his RFC, which he was not, it was harmless error for him to exclude these limitations.

### D. Credibility

Woznicki argues that the ALJ never explicitly acknowledged the length of Woznicki' work history in evaluating the credibility of his subjective complaints. (D.I. 10 at 12). When a claimant has a lengthy history of continuous work with the same employer, his or her testimony may be entitled to "substantial credibility." *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979).

9

Work history, however, "is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints." *Thompson v. Astrue*, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010); *Ruffley v. Colvin*, 2014 WL 807953, at *14 (W.D. Pa. Feb. 28, 2014). "Indeed, a claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility." *Thompson*, 2010 WL 3661530, at *4.

Here, Woznicki has not demonstrated he is entitled to enhanced credibility. He admits that there is a three year gap in earnings from 2006 to 2010. Also, unlike in *Dobrowolsky*, the seminal case establishing such enhanced credibility, Woznicki has not worked for the same employer. Finally, Woznicki does not address why the court should find error in the ALJ's reasons for discounting Woznicki's credibility. Ultimately, an ALJ may reject a claimant's subjective testimony that is found not credible so long as there is an explanation for the rejection of the testimony. S.S.R. 96–7p. The court cannot find that an ALJ erred based solely on the weight given to a claimant's work history without taking into account all of the factors that went into a credibility determination. *See Corley v. Barnhart*, 102 F. App'x 752 at *2 (3d Cir. 2004) (stating that a plaintiff's work history does not bolster his subjective complaints when the other evidence of record is inconsistent with those complaints).

## IV. CONCLUSION

For the foregoing reasons, (1) Woznicki's motion for summary judgment (D.I. 9) is granted-in-part and denied-in-part; and (2) the Commissioner's motion for summary judgment (D.I. 12) is denied-in-part and granted-in-part. The matter is remanded for further findings and proceedings consistent with this Memorandum. An appropriate order will be entered.

Dated: May 12, 2016

UNITED STATES DISTRICT JUDGE

10